Filed 3/1/23 Juarbe v. Jumbleberry Enterprises USA CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

|  |  |
|---|---|
| ALBERTO JUARBE, | B314040 |
| Plaintiff, Cross-defendant and Appellant, | (Los Angeles County Super. Ct. No. 20STCP00545) |
| v. |  |
| JUMBLEBERRY ENTERPRISES USA LTD., |  |
| Defendant, Cross-complainant and Respondent. |  |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dennis J. Landin, Judge. Affirmed.

Law Office of Gary Kurtz and Gary A. Kurtz for Plaintiff, Cross-defendant and Appellant.

Gordon Rees Scully Mansukhani and Christopher B. Queally for Defendant, Cross-complainant and Respondent.

————————————

# INTRODUCTION

Appellant Alberto Juarbe is the president of Nutri-burn, LLC (Nutri-burn). Juarbe signed an agreement pursuant to which Nutri-burn received marketing services from respondent Jumbleberry Enterprises USA Ltd. (Jumbleberry). Juarbe contends that he signed the agreement solely on behalf of Nutri-burn as Nutri-burn's corporate representative. Jumbleberry contends that Juarbe signed the agreement both on behalf of Nutri-burn and also on behalf of himself personally.

The agreement contained an arbitration provision, and when a dispute arose over payment for services Jumbleberry had rendered, Jumbleberry initiated an arbitration proceeding against both Nutri-burn and Juarbe personally. Neither Nutri-burn nor Juarbe participated in the arbitration. The arbitrator ruled in favor of Jumbleberry, awarding it damages payable jointly by Nutri-burn and Juarbe.

Juarbe later filed a petition in the superior court to vacate the arbitration award against him personally on the ground he was not bound by the contract between Nutri-burn and Jumbleberry. Jumbleberry filed a cross-petition to confirm the arbitration award. The superior court denied Juarbe's petition to vacate on two grounds—that it was untimely and, even if timely, Juarbe was bound by the contract. The court granted Jumbleberry's petition to confirm the arbitration award and entered judgment to that effect.

Juarbe now appeals.[1]  We affirm because the trial court properly concluded that Juarbe's petition to vacate the arbitration award was untimely.  As a consequence, the trial court was statutorily precluded from considering Juarbe's challenge to the arbitration award and was required to confirm the arbitration award.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    The Contract

Nutri-burn entered into an agreement with Jumbleberry under which Jumbleberry provided Nutri-burn with access to Jumbleberry's online advertising network of marketing affiliates to promote Nutri-burn's products.  The agreement was in two parts, a "Master Service Agreement" (MSA) and a "Jumbleberry Insertion Order" (Insertion Order).  Both agreements identified Nutri-burn as "Advertiser" and Juarbe as "Advertiser Owner/Representative."  Juarbe signed both agreements.

### 1.    *The MSA*

We summarize here those portions of the MSA relevant to this appeal.  The MSA states, on the first page, "This MSA, together with the insertion orders executed between Jumbleberry and Advertiser from time to time ('IO' or 'IOs'), governs the rights and obligations of Advertiser, Advertiser's undersigned representative or owner, and Jumbleberry (collectively, 'the parties' and, individually, a/the 'party'), comprise the entire agreement between the parties with respect to the subject matter

---

[1] Before the trial court, Juarbe represented that Nutri-burn had no basis to object to the arbitration award, and Nutri-burn is not a party to this appeal.

3

hereof (i.e., all of the terms and conditions relating to the Advertiser's use of the Network) and supersede and replace any and all prior agreements entered into by and between Jumbleberry and the Advertiser, understandings and representations and warranties, whether written or oral."

Regarding payment, the MSA states that "Advertiser agrees to pay Jumbleberry for all advertising published by Jumbleberry on a Cost per Acquisition ('CPA') or Cost per Lead ('CPL') basis, as defined in the applicable [Insertion Order]." The MSA further states with respect to payment, "Advertiser's undersigned signatory or owner, individually and as legal agent of Advertiser, attests that they have the authority to bind Advertiser to all Payment terms, and shall remain jointly and severally liable for any unpaid invoices as well as Advertiser's other obligations under the terms of this Agreement." The MSA also states "Advertiser agrees that it and its undersigned representative or owner shall be liable for payment of all invoices to Jumbleberry."

The MSA contains a section which lists several representations and warranties made by the parties, and which includes the statement "Advertiser's undersigned representative or owner provides the same representations and warranties made by the Advertiser as set forth herein and accepts personal liability for all obligations of the Advertiser as set forth herein."

The MSA includes an arbitration provision, which provides "With respect to any claim brought by Advertiser . . . , the parties agree to mandatory, confidential, final and binding arbitration with the sole and exclusive forum for such arbitration in the City of Toronto, Canada. With respect to any claim brought by Jumbleberry . . . , the parties agree that venue and personal

4

jurisdiction are proper in the City of Toronto, Canada, New York City, New York, and/or any other forum in which a party is subject to personal jurisdiction and that Jumbleberry may elect in its discretion to bring its claim in mandatory, confidential, final and binding arbitration or otherwise in a federal or state court in such forum." If the arbitration takes place in the United States, then it "will be administered by the American Arbitration Association ('AAA') according to the Commercial Rules," while if the arbitration takes place in Canada, it "will be administered by the Simplified Arbitration Rules of the ADR Institute of Canada, Inc." Finally, "[t]he prevailing party in any claim between the parties shall be entitled to an award of its costs and attorney's fees."

2.    *The Insertion Order*

As relevant to this appeal, the Insertion Order incorporates the MSA and provides, in relevant part, that "Jumbleberry will invoice Advertiser on a weekly basis each Monday for commissions on CPA orders delivered during the prior seven (7) day period (Monday to Sunday) to be paid in full within the 'Payment Terms' days of receipt of invoice."[2]

Both the MSA and Insertion Order were signed and effective on December 10, 2018. Jumbleberry thereafter performed under these agreements, and invoiced Nutri-burn

---

[2] As defined in both the MSA and Insertion Order, "CPA" refers to "Cost per Acquisition"; the Insertion Order defines a "[CPA a]ction . . . as an internet user clicking on a link tracked by the Jumbleberry Network, landing on Advertiser's web site . . . and completing a purchase or submitting an order on Advertiser's website."

$128,820.23 for marketing services. According to Jumbleberry, no payment was received from either Nutri-burn or Juarbe for these services.

**B.      The Dispute and Arbitration Proceeding**

On June 5, 2019, Jumbleberry submitted a demand for arbitration with the AAA to recover on the outstanding invoices. The International Centre for Dispute Resolution (ICDR), which is the international division of the AAA, undertook administration of the arbitration. Attorney Kabir Duggal of Arnold & Porter LLP in New York, New York was appointed as the arbitrator.

A preliminary hearing in the arbitration was scheduled for August 14, 2019, and the ICDR sent notice of the hearing to Juarbe and Nutri-burn by e-mail and overnight mail; however, neither Nutri-burn nor Juarbe participated in the preliminary hearing (which was held telephonically) or any other proceeding in the arbitration. During the preliminary hearing, ICDR called Nutri-burn and Juarbe at the phone number listed for them on the Insertion Order without success to attempt securing their participation in the hearing. The arbitrator and Jumbleberry continued to send copies of all communications and other documents related to the arbitration to Nutri-burn and Juarbe at Juarbe's e-mail address during the arbitration proceedings.

In his petition in this matter, Juarbe acknowledges that he and Nutri-burn received notice of the arbitration; Juarbe asserts he provided it to an attorney, whom he and Nutri-burn assumed would represent them in the arbitration. Juarbe indicates in his petition that he and Nutri-burn "disregarded any mail relating to the arbitration" after it commenced and did not timely receive e-mails about the arbitration because they were caught by his e-mail system's spam filter.

6

In a "[p]artial [f]inal [a]ward" issued on October 7, 2019, the arbitrator concluded that Jumbleberry and Nutri-burn entered into an agreement, comprised of the MSA and Insertion Order, and that the agreement was guaranteed by Juarbe. The arbitrator determined that Jumbleberry had provided Nutri-burn with the services promised and had sent Jumbleberry invoices from December 31, 2018, through February 7, 2019, in the total amount of $128,820.23, which Nutri-burn had failed to pay. Based on this, the arbitrator found Nutri-burn and Juarbe "jointly or severally" liable to pay Jumbleberry $128,820.23.

The arbitrator issued a "[f]inal [a]ward" on November 5, 2019. This award required Nutri-burn and Juarbe to pay Jumbleberry the $128,820.23, plus $2,025 for arbitration fees and $6,000 for the arbitrator's fee, for a total award of $136,845.23. The arbitrator rejected Jumbleberry's request for attorney's fees.

The ICDR served the award on the parties on November 6, 2019, by Federal Express and e-mail.

## C. Superior Court Proceedings

### 1. *Juarbe's Petition to Vacate*

Juarbe filed a petition to vacate the arbitration award on February 10, 2020. Juarbe filed the petition on behalf of himself only, and not on behalf of Nutri-burn. Juarbe served his petition by mailing Jumbleberry a notice and acknowledgment of receipt of the summons and complaint on July 28, 2020; Jumbleberry's counsel executed the acknowledgment of receipt on August 4, 2020.

7

In his petition, Juarbe sought to have the arbitration award vacated pursuant to Code of Civil Procedure[3] section 1286.2, subdivision (b)(4), on the ground the arbitrator "exceeded their powers" because Juarbe "never agreed to be personally bound by any contract with Jumbleberry, never agreed to arbitrate with Jumbleberry, and never submitted to the jurisdiction of the arbitration or the arbitrator." Juarbe also asserted a cause of action for declaratory relief regarding "(a) the identity of the parties bound by the MSA; (b) the scope of the arbitration provision in the MSA; (c) whether the arbitration provision in the MSA is limited to require arbitration between Jumbleberry and Nutri-[b]urn, exclusively; and (d) whether Mr. Juarbe engaged in any action or omission that would submit him to the jurisdiction of the arbitration proceeding initiated by Jumbleberry or the arbitration award in favor of Jumbleberry."

Juarbe submitted a declaration in support of his petition to vacate the arbitration award,[4] that acknowledged he signed the MSA and Insertion Order but indicated that he did not think he was signing for himself. Juarbe further stated that he did not see some of the contract language upon which Jumbleberry was relying to hold him personally liable, and that Jumbleberry's sales person "pressured me to immediately sign and return" the agreements. He stated that "Nutri-[b]urn, LLC did not attend the arbitration because it made a decision that it would be more

---

[3] Unspecified statutory references are to the Code of Civil Procedure.

[4] The copy of the declaration filed with the court electronically is unsigned. For purposes of deciding this appeal, we disregard that fact.

8

expensive to appear and defend the arbitration than to simply go out of business and/or file a corporate bankruptcy." The declaration also discussed how, in Juarbe's view, Jumbleberry's services were not as effective as promised, and claimed that Nutri-burn lost money on the leads provided by Jumbleberry.

On August 14, 2020, Jumbleberry filed a demurrer arguing that Juarbe's petition was not timely served in compliance with section 1288, which requires that a petition to vacate an arbitration award be "served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner." (*Ibid*.) Jumbleberry requested the trial court take judicial notice of the acknowledgment of receipt of the summons and complaint which its counsel had signed on August 4, 2020; Juarbe had filed the notice and acknowledgment of receipt on August 6, 2020.

Juarbe opposed the demurrer, arguing his petition was timely because the arbitration award had never been served in the manner required by the applicable statute. Juarbe acknowledged that the statute allowed for service "as provided in the agreement," but contended that he was not personally bound by the MSA. Juarbe also argued, more generally, that the court should vacate the arbitration award because he was not personally bound by the MSA or Insertion Order and because the agreements could not be enforced against him due to lack of mutuality and consideration.

9

## 2.    *Jumbleberry's Petition to Confirm*

On August 19, 2020, Jumbleberry filed a petition to confirm the arbitration award.[5]  Jumbleberry brought Nutri-burn into the action by serving the petition on Nutri-burn through a notice and acknowledgment of receipt which Juarbe signed and returned on behalf of Nutri-burn.

Juarbe filed a demurrer to Jumbleberry's petition, and otherwise opposed it.  Juarbe reiterated the arguments in his petition to vacate, saying the court should dismiss Jumbleberry's petition as against him because he was not personally bound by the MSA and Insertion Order and the agreements could not be enforced against him because of lack of mutuality of obligation and lack of consideration.  Juarbe also cited section 1287.2, which provides that "The court shall dismiss the proceeding under this chapter as to any person named as a respondent if the court determines that such person was not bound by the arbitration award and was not a party to the arbitration."

In response to these assertions, Jumbleberry argued that Juarbe was personally bound by the MSA based on the plain language of the agreement.  Addressing Juarbe's claims that the contracts lacked mutuality and consideration, it argued those claims failed because they were not raised in Juarbe's petition and also because the arbitrator's finding that the contract was

---

[5] Jumbleberry filed the declaration of its counsel and a memorandum of points and authorities in support of the petition the day before it filed the petition itself.  Jumbleberry apparently delayed filing the petition because it had difficulty filing the document as a "cross petition," and had to alter the caption to refer to the pleading as a cross-complaint.  We will refer to this pleading as a petition.

enforceable against Juarbe was binding on the parties and not reviewable by the court. Jumbleberry also argued that the arbitration award was properly served according to the methods set out in the MSA, and therefore Juarbe's petition was not timely served.

3.      *The Trial Court's Ruling*

The court held a hearing on both parties' demurrers on November 18, 2020, and took the matter under submission after oral argument. The next day, the court issued a written order sustaining Jumbleberry's demurrer without leave to amend and overruling Juarbe's demurrer. The court concluded that Juarbe's petition had not been timely served within 100 days of service of the arbitration award, as required by section 1288. In reaching this conclusion, the court rejected Juarbe's argument that the notice provisions in the MSA did not apply to him.

The court also held that, even assuming Juarbe had timely served his petition, Juarbe's challenge to the arbitration award failed because he was personally bound by the MSA. The court stated on this point, "The plain language of the MSA expressly provides that the MSA governs the rights and obligations of Nutri-[b]urn, Nutri-burn's 'undersigned representative or owner' and Jumbleberry and that 'the parties' agree to mandatory, confidential, final and binding arbitration. . . . Under statutory rules of contract interpretation, the [c]ourt finds that Juarbe is bound by the plain language of the MSA's terms."

Finally, the court rejected Juarbe's claim that the MSA was unenforceable due to lack of mutuality or consideration because "courts generally cannot review arbitration awards for errors of fact or law, even when those errors appear on the face of the award or cause substantial injustice to the parties."

11

On January 13, 2021, the court held a hearing on Jumbleberry's petition to confirm and granted the petition. On February 25, 2021, Jumbleberry filed a motion for attorney's fees, costs and interest pursuant to the terms of the MSA. Juarbe opposed the motion on April 8, 2021. On May 4, 2021, the court granted Jumbleberry's motion for attorney's fees, costs and pre-judgment interest.

On May 10, 2021, the court entered judgment in favor of Jumbleberry and against Nutri-burn and Juarbe, confirming the arbitration award against both Nutri-burn and Juarbe and holding Nutri-burn and Juarbe jointly and severally liable to Jumbleberry in the total amount of $190,237.76, comprised of $136,845.23 for the arbitration award, $20,574 in attorney's fees, $2,038.53 in costs, and $30,780 in pre-judgment interest.

On July 9, 2021, Juarbe timely appealed.

## DISCUSSION

### A. Legal Principles and Standard of Review

"California law favors alternative dispute resolution as a viable means of resolving legal conflicts." (*Richey v. AutoNation, Inc.* (2015) 60 Cal.4th 909, 916.) "[I]t is the general rule that parties to a private arbitration impliedly agree that the arbitrator's decision will be both binding and final." (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9, fn. omitted.) "Because the decision to arbitrate grievances evinces the parties' intent to bypass the judicial system and thus avoid potential delays at the trial and appellate levels, arbitral finality is a core component of the parties' agreement to submit to arbitration." (*Id.* at p. 10.)

"[J]udicial review of private, binding arbitration awards is generally limited to the statutory grounds for vacating (§ 1286.2) or correcting (§ 1286.6) an award." (*Moshonov v. Walsh* (2000) 22

12

Cal.4th 771, 775, citing *Moncharsh v. Heily & Blase, supra*, 3 Cal.4th at pp. 8-28.) Thus, there are three types of petitions available—to vacate, correct or confirm an award. (§ 1285.) When any of type of petition is filed, "the court shall confirm the award as made, whether rendered in this state or another state, unless in accordance with this chapter it corrects the award and confirms it as corrected, vacates the award or dismisses the proceeding." (§ 1286.) Pursuant to section 1287.4, "If an award is confirmed, judgment shall be entered in conformity therewith. . . ."

"We apply de novo review to an order sustaining a demurrer." (*SI 59 LLC v. Variel Warner Ventures, LLC* (2018) 29 Cal.App.5th 146, 152.) In reviewing a trial court's ruling on a petition to confirm, correct or vacate an arbitration award, " 'Issues of statutory interpretation and the application of that interpretation to a set of undisputed facts are questions of law subject to independent review . . . . [Citation.]' [Citation.]" (*Soni v. SimpleLayers, Inc.* (2019) 42 Cal.App.5th 1071, 1087.) Furthermore, "We independently review the trial court's interpretation of a contract, including the resolution of any ambiguity, unless the interpretation depends on the trial court's resolution of factual questions concerning the credibility of extrinsic evidence. [Citation.]" (*Dowling v. Farmers Ins. Exchange* (2012) 208 Cal.App.4th 685, 694.) "We apply the substantial evidence test to the trial court's determination of disputed factual issues." (*Soni, supra*, at p. 1087.)

## B. Juarbe's Challenge to the Arbitration Award Was Untimely

There are different deadlines for a petition to vacate or correct an arbitration award, on the one hand, and for a petition

13

to confirm an award, on the other.  A petition to vacate or correct an award "shall be served and filed not later than 100 days after the date of the service of a signed copy of the award on the petitioner." (§ 1288.)  A petition to confirm need not be filed and served until up to four years after a signed copy of the award is served.  (*Ibid.*)  Although a party may, in a response to another party's petition, "request the court to dismiss the petition or to confirm, correct or vacate the award" (§ 1285.2), a response requesting vacatur or correction is subject to the 100-day deadline (§ 1288.2).**6**  The end result of these various deadlines is

---

**6** Such a response "shall be served and filed not later than 100 days after the date of service of a signed copy of the award upon: [¶] (a) The respondent if he was a party to the arbitration; or [¶] (b) The respondent's representative if the respondent was not a party to the arbitration." (§ 1288.2)  "[S]ections 1288.2 and 1288 together establish a clear deadline of 100 days after which a request to vacate is untimely." (*Law Finance Group, LLC v. Key* (2021) 67 Cal.App.5th 307, 319, 322, review granted Nov. 10, 2021, S270798.)  While section 1290.6 provides that a response to a petition "shall be served and filed within 10 days after service of the petition," "There is nothing in the statutory scheme suggesting that the Legislature intended the procedural rule in section 1290.6 governing all responses to take precedence over the firm time limitation in section 1288.2 applicable to requests to vacate." (*Law Finance Group*, *supra*, at p. 319.)  Thus, "if a petition to confirm is filed more than 90 days after an award is served, a competing request to vacate or correct the award—no matter how styled—must still have been filed within 100 days of the service of the award, *even if that due date is less than 10 days after service of the petition to confirm.*" (*Darby v. Sisyphian, LLC* (2023) 87 Cal.App.5th 1100, 1111, citing *Douglass v. Serenivision, Inc.* (2018) 20 Cal.App.5th 376, 384-385.)

14

that a party who seeks to have an arbitration award vacated or corrected must file either a petition or a response to another party's petition within 100 days of being served with a signed copy of the arbitration award. Pursuant to section 1286.4, a trial court "may not vacate an award unless" a party has requested vacatur or correction of the award in a petition or response that "has been duly served and filed."

Here, Juarbe filed a petition to vacate the arbitration award. While he *filed* the petition within the 100-day period following service of the arbitration award, he failed to timely *serve* the petition within the 100 days. This is fatal because the statute required both filing *and* service of Juarbe's petition to vacate within 100 days of the service of the arbitration award. (§ 1288.) The arbitration award was served on the parties on November 6, 2019. Adding two court days for electronic service (§ 1010.6, subd. (a)(3)(B)), the 100-day period ended on February 18, 2020.[7] Juarbe filed his petition on February 10, 2020, but did not serve it until August 4, 2020, when Jumbleberry's counsel executed an acknowledgment of receipt of the summons and complaint. Thus, Juarbe missed the deadline to serve his petition by more than five months. Juarbe also sought vacatur of the award in his response to Jumbleberry's petition, but that response was served on September 3, 2020, and filed the next day, and was thus untimely under section 1288.2 to the extent it sought to vacate the award.

---

[7] Juarbe acknowledges the "award was circulated by email and Federal Express." As we discuss below, service of the award by e-mail was authorized under the MSA and, therefore, under the applicable statute. However, it is unclear whether the service by Federal Express here complied with the MSA.

Juarbe contends that his petition to vacate was timely because the arbitration award was not properly served on him and, as a result, the 100-day period set forth in section 1288 never began to run.  Juarbe relies on section 1283.6, which provides that "The neutral arbitrator shall serve a signed copy of the award on each party to the arbitration personally or by registered or certified mail or as provided in the agreement."  Juarbe points out that he was not served personally or by registered or certified mail.

Section 1283.6 allows for service "as provided in the agreement," meaning here the MSA and Insertion Order.  (See § 1280, subd. (a) [defining " 'Agreement' "].)  Jumbleberry points out that the MSA allows for "notices, claims and other communications" under the agreement to be delivered in various ways, including "electronically" and "by overnight delivery service."

Juarbe responds with three arguments.  First, he contends that he is not personally bound by the MSA because he did not sign it in his personal capacity.  Second, he contends the agreement is unenforceable because of a lack of mutuality of obligation and lack of consideration.  Third, he contends that, even if he is bound by the MSA, it does not specify how the arbitration award was to be served.  As explained below, we do not find these arguments persuasive.

1. *Juarbe Was Personally Bound by the MSA*

"The basic goal of contract interpretation is to give effect to the parties' mutual intent at the time of contracting.  (Civ. Code, § 1636; [citation].)  When a contract is reduced to writing, the parties' intention is determined from the writing alone, if possible.  (Civ. Code, § 1639.)  'The words of a contract are to be

16

understood in their ordinary and popular sense.' (Civ. Code, § 1644; [citation].)" (*Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.* (2003) 109 Cal.App.4th 944, 955 (*Founding Members*).) " 'Contract formation is governed by objective manifestations, not the subjective intent of any individual involved. [Citations.] The test is "what the outward manifestations of consent would lead a reasonable person to believe." [Citation.]' [Citation.]" (*Allen v. Smith* (2002) 94 Cal.App.4th 1270, 1277.) Thus, "[t]he parties' undisclosed intent or understanding is irrelevant to contract interpretation. [Citations.]" (*Founding Members*, *supra*, at p. 956.)

The clear, conspicuous, and plain terms of the MSA provide that Juarbe was personally obligated under that agreement. Juarbe acknowledges he signed the MSA but contends he did so solely in his capacity as Nutri-burn's president. The terms of the MSA, however, refute this contention. First, the MSA indicates it is an agreement between Jumbleberry "and the following," and what follows is the table reproduced below:

### ADVERTISER INFORMATION

| Advertiser Name | Nutri-burn LLC | | |
|---|---|---|---|
| Advertiser Address | 2118 Wilshire blvd #213<br>santa monica, california 90403<br>usa | | |
| Advertiser Owner / Representative | Alberto Juarbe | Email | alberto@verifiedmediagroup.com |
| Title | | Phone | (949) 350-4448 |

The MSA then states, "This MSA, together with the insertion orders executed between Jumbleberry and Advertiser from time to time ('IO' or 'IOs'), governs the rights and obligations of Advertiser, **Advertiser's undersigned representative or**

17

**owner**, and Jumbleberry (**collectively, 'the parties'** and, **individually, a/the 'party'**) . . . ." (Bold added.) Thus, under the terms of the MSA, Juarbe is a "party" to the MSA, and the agreement governs the rights and obligations of "Advertiser's undersigned representative or owner," namely, Juarbe.

The MSA also states, in a section titled "Payment and Deposit," "Advertiser's undersigned signatory or owner, **individually** and as legal agent of Advertiser, attests that they have the authority to bind Advertiser to all Payment Terms, and **shall remain jointly and severally liable for any unpaid invoices as well as Advertiser's other obligations under the terms of this Agreement**." (Bold added.) This provision makes clear that Juarbe was signing in both a personal and representative capacity and is personally liable for payment on the advertiser's behalf and for advertiser's other obligations under the agreement.

In addition, in the contract section regarding representations and warranties made by the parties, the MSA states, "Advertiser's undersigned representative or owner provides the same representations and warranties made by the Advertiser as set forth herein **and accepts personal liability for all obligations of the Advertiser as set forth herein**." (Bold added.) This provision thus expressly states that Juarbe was signing on his own behalf and would be personally liable under the agreement.

Finally, the arbitration provision states "the parties agree" that Nutri-burn will arbitrate its claims and that Jumbleberry can elect to arbitrate its claims; as is noted above, the MSA defines "parties" to include the "Advertiser's undersigned representative or owner," namely, Juarbe.

In sum, the MSA clearly indicates the intent of the parties (with Juarbe being one of those parties) that Juarbe will be personally responsible under the agreement. The terms are not hidden and are not ambiguous.[8] "In the absence of fraud, mistake, or another vitiating factor, a signature on a written contract is an objective manifestation of assent to the terms set forth there." (*Rodriguez v. Oto* (2013) 212 Cal.App.4th 1020, 1027.)

Juarbe points out that there is only one signature line for the advertiser owner/representative, and the signature block does not state that the signature is both on behalf of the advertiser and the person signing. However, the contract terms discussed above clearly indicate that the person signing on behalf of the advertiser is also binding themself personally.[9] Juarbe cites cases for the proposition that a contract cannot be enforced against a party who has not signed the contract. (E.g., *Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 17; *Smith v. Microskills San Diego L.P.* (2007) 153 Cal.App.4th 892, 896.) This proposition is

---

[8] Juarbe's argument that the agreements must be interpreted against Jumbleberry because Jumbleberry prepared them fails because we do not find the agreements to be ambiguous as to whether or not Juarbe is personally bound. This rule of interpretation only applies where contract terms are ambiguous. (Civ. Code, § 1654; *Howe v. American Baptist Homes of the West, Inc.* (1980) 112 Cal.App.3d 622, 628.)

[9] The fact that the MSA expressly imposes substantive obligations on Juarbe distinguishes this case from *Freedman v. Brutzkus* (2010) 182 Cal.App.4th 1065, 1070, in which the court held that an attorney's "signature approving the document as to form and content was not an actionable representation to" the opposing counsel.

19

inapt here because Juarbe did sign the MSA. Juarbe contends that he signed only on behalf of Nutri-burn, but the terms of the contract evince the parties' intent that Juarbe be personally bound. Thus, the cases Juarbe cites for the proposition that a corporate officer or director who signs an arbitration agreement solely in their representative capacity is not bound by the agreement are also inapposite. (See *Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 865-867; *Benasra v. Marciano* (2001) 92 Cal.App.4th 987, 990.)

In a declaration submitted in support of his petition to vacate, Juarbe acknowledged that he signed the MSA and Insertion Order but stated that he "did not carefully read the agreements" and did not see some of the contract language upon which Jumbleberry was relying to hold him personally liable. Juarbe's appellate briefing does not make a similar argument. Regardless, to the extent Juarbe suggests he should not be bound by the MSA because he did not thoroughly review it before signing, his claim fails because reasonable diligence requires a party to read a contract before signing it. (*Harris v. TAP Worldwide, LLC* (2016) 248 Cal.App.4th 373, 383; see *Hulsey v. Elsinore Parachute Center* (1985) 168 Cal.App.3d 333, 339 ["It is well established, in the absence of fraud, overreaching or excusable neglect, that one who signs an instrument may not avoid the impact of its terms on the ground that he failed to read the instrument before signing it"].) Juarbe's declaration also states that his "understanding of the documents and intention at the time was that the contract was between Jumbleberry and Nutri-[b]urn, LLC, not Jumbleberry and Alberto Juarbe." Such "undisclosed intent or understanding is irrelevant to contract

interpretation." (*Founding Members*, *supra*, 109 Cal.App.4th at p. 956.)

In conclusion, the terms of the MSA expressly and unambiguously impose obligations on Juarbe and evince the parties' intent that Juarbe be personally bound by the agreement.

2.      *The MSA Is Enforceable Against Juarbe*

Relying on *Bleecher v. Conte* (1981) 29 Cal.3d 345, Juarbe contends the MSA is unenforceable as against him for lack of mutuality of obligation. In *Bleecher*, the court addressed whether an agreement "lacked mutuality of obligation and, therefore, was unenforceable." (*Id.* at p. 350.) It explained that "[a] bilateral contract is one in which there are mutual promises given in consideration of each other. [Citations.] The promises of each party must be legally binding in order for them to be deemed consideration for each other. [Citation.]" (*Ibid.*)

Juarbe argues that the MSA lacks mutuality of obligation because Jumbleberry only owes obligations to Nutri-burn, not to Juarbe, and because, under the terms of the MSA, he cannot compel Jumbleberry to arbitrate whereas both Jumbleberry and Nutri-burn can compel arbitration. Juarbe also argues that consideration for his promise was lacking because he did not personally benefit from the MSA or Insertion Order.

Juarbe's arguments fail because while "a contract is illusory where one party provides no legal consideration whatsoever," it is not true that "every individual promise in a contract must be supported by new and different consideration. Generally speaking, the rule is to the contrary: one promise in a contract 'may be consideration for several counter promises.' (1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 215, p. 224; accord, 2 Corbin on Contracts (rev. ed.1995) § 5.12, pp. 56-

21

57 ['A single and undivided consideration may be bargained for and given as the agreed equivalent of one promise or of two promises or of many promises. The consideration is not rendered invalid by the fact that it is exchanged for more than one promise. If it could support each of the promises taken separately it is consideration for all of them.' (Fns. omitted.)]" (*Martin v. World Savings & Loan Assn.* (2001) 92 Cal.App.4th 803, 809.)

There was mutuality of obligation here because each of the three parties to the MSA made legally binding promises. Among other promises, Jumbleberry agreed to provide access to its online advertising network of marketing affiliates, Nutri-burn agreed to pay for that access, and Juarbe agreed to be jointly liable for payment. Juarbe benefitted from the MSA and Insertion Order because his company, Nutri-burn, benefitted.

Even assuming for the sake of argument that Juarbe did not receive any consideration personally, his agreement to be jointly liable for payment qualifies him as a "surety or guarantor," which is defined as "one who promises to answer for the debt, default, or miscarriage of another." (Civ. Code, § 2787.) Civil Code section 2792 provides that "Where a suretyship obligation is entered into at the same time with the original obligation, or with the acceptance of the latter by the creditor, and forms with that obligation a part of the consideration to him, no other consideration need exist. . . ." Here, Juarbe entered the MSA at the same time as did Nutri-burn, and thus under Civil Code section 2792 "no other consideration" is required for Juarbe to be bound as a surety or guarantor. (*Rancho Santa Fe Pharmacy, Inc. v. Seyfert* (1990) 219 Cal.App.3d 875, 878.)

Therefore, Juarbe's claims that the MSA was unenforceable against him for lack of mutual obligation and lack of consideration fail.

3. *The Parties' Agreement Permitted Service of the Arbitration Award by E-mail*

Section 1283.6 governs service of the arbitration award and allows service "on each party to the arbitration personally or by registered or certified mail or as provided in the agreement." Juarbe contends that the MSA does not govern how the arbitration award was to be served, and thus the award had to be served personally or by registered or certified mail (which it was not).

The term "agreement" for alternative forms of service, as used in section 1283.6, includes the MSA at issue here. (§ 1280, subd. (a) [defining " 'Agreement' "].) The MSA, which contains the arbitration provisions between the parties, provides that "[a]ll notices, claims and other communications hereunder will be in writing and will be deemed to have been duly given if provided electronically, personally delivered to an officer or mailed by registered or certified mail, return receipt requested by overnight delivery service to the parties at their respective addresses." This provision, which applies to "all" notices and other communications related to the MSA, covers the arbitration award, and clearly authorizes service by e-mail.[10]

_____

[10] The provision also authorizes delivery "by registered or certified mail, return receipt requested by overnight delivery service." It is unclear whether this includes delivery by a private service, such as Federal Express; if it does, it appears to require a return receipt. It is unclear from the record whether the delivery

23

Juarbe does not dispute that the arbitration award was served on him by e-mail. In his petition to vacate, Juarbe indicates that he did not timely receive some e-mail notices because they were caught in his e-mail system's spam folder. However, there can be no doubt that he had received the arbitration award by the time he filed his petition to vacate, as a copy of the award was attached to his petition. Yet, even starting the 100-day period from the date Juarbe filed his petition on February 10, 2020, he still delayed well over 100 days, until August 4, 2020, before serving his petition. Under these circumstances, Juarbe did not serve his petition within 100 days of service as required by section 1288.

### 4. *Conclusion*

Based on the above, we conclude that Juarbe's petition to vacate was untimely and the trial court was thus precluded from considering his challenge to the arbitration award. Juarbe's response to Jumbleberry's petition was also untimely to the extent it sought to vacate the arbitration award. Juarbe's "failure to timely [serve and] file a petition or response seeking to vacate or correct [the arbitration] award before the trial court deprives us of the ability to consider [his] arguments on appeal seeking to vacate . . . that award." (*Darby v. Sisyphian, LLC*, *supra*, 87 Cal.App.5th at p. 1114, fn. omitted; see *Soni v. SimpleLayers, Inc.*, *supra*, 42 Cal.App.5th at pp. 1092-1093 [party is barred from challenging confirmation of an arbitration award if they fail to timely file and serve a petition, or a response to another party's petition, seeking vacatur or correction of the

___

of the arbitration award by Federal Express included a request for a return receipt.

award].)  Pursuant to section 1286.4, the trial court was precluded from vacating the arbitration award because Juarbe had not "duly served and filed" either a petition to vacate or correct or a response seeking such relief.

## C.    Section 1287.2 Does Not Apply

Juarbe lastly argues that the trial court should have dismissed Jumbleberry's petition to confirm the arbitration award under section 1287.2, which provides that "The court shall dismiss the proceeding under this chapter as to any person named as a respondent if the court determines that such person was not bound by the arbitration award and was not a party to the arbitration."

A motion to dismiss under section 1287.2 is not subject to the 100-day deadline which applies to petitions to vacate or correct an arbitration award.  However, given our conclusion that Juarbe *was* a party to the arbitration, he cannot invoke section 1287.2.  The phrase "party to the arbitration" is specially defined in section 1280 as "a party to the arbitration agreement, including any of the following:

"(1) A party who seeks to arbitrate a controversy pursuant to the agreement.

"(2) A party against whom such arbitration is sought pursuant to the agreement.

"(3) A party who is made a party to the arbitration by order of the neutral arbitrator upon that party's application, upon the application of any other party to the arbitration, or upon the neutral arbitrator's own determination."  (§ 1280, subd. (h).)

Juarbe fits within this definition.  First, he was a party to the MSA and the arbitration provision included within the MSA.  As explained above, Juarbe was personally bound under the

25

MSA, and he was included in the term "parties" on the first page of the MSA and the arbitration provision in which "the parties" agreed that Jumbleberry could elect to arbitrate its claims. Second, Jumbleberry sought to arbitrate its claim against Juarbe by naming him as a respondent in its demand for arbitration. Juarbe admitted in his petition to vacate that Jumbleberry "started the process of initiating an arbitration" against him personally and Nutri-burn, and that he and Nutri-burn received notice of the arbitration. Thus, section 1287.2 does not apply to Juarbe.

## DISPOSITION

The judgment is affirmed. Jumbleberry is awarded its costs on appeal.

NOT TO BE PUBLISHED


WEINGART, J.


We concur:



CHANEY, J.



BENDIX, Acting P. J.

26